## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| SPARKLE MARTIN *c/o* J.M.<br><br>Plaintiff,<br><br>v.<br><br>PATRICIA PISERCHIA; and<br>LENAPE REGIONAL HIGH<br>SCHOOL DISTRICT,<br><br>Defendants. | Civil No. 23-21669 (RMB-EAP)<br><br>**OPINION** |

**APPEARANCES**

Sparkle Martin
PO Box 510
Maple Shade, NJ 08052

>    *Pro se Plaintiff*

MADDEN & MADDEN, PA
Michael V. Madden, *Esq.*
108 Kings Highway East, Suite 200
Haddonfield, NJ 08033-0389

>    *Attorney for Defendants Patricia Piserchia and Lenape Regional High School District.*

# TABLE OF CONTENTS

I.    INTROCUTION ...............................................................................1

II.   FACTUAL BACKGROUND .............................................................3

III.  PROCEDURAL BACKGROUND .......................................................5

IV.   LEGAL STANDARD .......................................................................7

    A. Rule 12(c) Standard ...................................................................7

    B. Summary Judgment Standard .......................................................8

V.    DISCUSSION .................................................................................9

    A. Claims Brought By J.M. and Ms. Martin Against Ms. Piserchia ...................9

    B. Claims Brought By Ms. Martin on Behalf of J.M .........................................11

        1.   Third Circuit Precedent Prevents Non-Lawyer pro se Parents From
            Asserting Claims on Behalf of Their Minor Children ..................11

        2.   The Court Will Appoint pro bono Counsel on Behalf of J.M. .......14

    C. Claims Brought By Ms. Martin on Her Own Behalf .....................................17

        1.   Ms. Martin Can Assert IDEA and McKinney-Vento Act Claims on
            Her Own Behalf But Not ADA and Rehabilitation Act Claims ....17

            i.   IDEA ..............................................................................18

            ii.  McKinney-Vento Act .......................................................19

            iii. ADA and Rehabilitation Act ..............................................19

        2.   Plaintiff Failed to Exhaust her IDEA, ADA, and Rehabilitation Act
            Remedies ..................................................................................19

        3.   McKinney-Vento Act Claims .......................................................22

            i.   Statutory Framework .......................................................22

            ii.  The McKinney-Vento Act is Enforceable Through 42 U.S.C.
               § 1983 ......................................................................25

                    a. Congressional Intention to Create a Federal Right ....28

                    b. Congressional Preclusion of a Section 1983 Remedy . 30

            iii. The McKinney-Vento Act Does Not Impose an Exhaustion
               Requirement ..................................................................33

            iv.  The District Failed to Comply With McKinney-Vento's
               Pendency Provision ..........................................................34

4. Plaintiff Must Establish the Remaining Elements of Her Municipal Liability Claim Through pro bono Counsel ...................................39

VI. CONCLUSION .............................................................................................41

RENÉE MARIE BUMB, Chief United States District Judge

I.     INTROCUTION

THIS MATTER comes before the Court upon the Motion for Summary
Judgment filed by Plaintiff Sparkle Martin ("Plaintiff" or "Martin"), on behalf of
herself and her minor son, J.M. [Docket No. 16.] Defendants Patricia Piserchia and
Lenape Regional High School District filed a Cross-Motion for Judgment on the
Pleadings and Opposition to Plaintiff's Motion for Summary Judgment, [Docket No.
21.] Ms. Martin submitted a Reply Brief in further support of her Motion for Summary
Judgment and in Opposition to Defendants' Cross-Motion for Judgment on the
Pleadings. [Docket No. 28.]

At the start of the 2022 school year, Sparkle Martin and her minor son, J.M.,
were homeless, checking in and out of hotels. Sometimes, they stayed in hotels in
Mount Laurel, New Jersey. Sometimes, they stayed in hotels in neighboring Maple
Shade, New Jersey. Ms. Martin attempted to enroll J.M. at Lenape Regional High
School in Mount Laurel. But Lenape Regional High School District (the "District")
and its Homeless and Displaced Student Liaison, Patricia Piserchia (together,
"Defendants") refused to enroll J.M., finding that Ms. Martin and J.M. were staying
at a hotel in Maple Shade at the time of J.M.'s enrollment and that J.M. would have
to enroll at school in Maple Shade. Ms. Martin disputed this, arguing that she was
residing at a hotel in Mount Laurel at the time of J.M.'s enrollment.

When a dispute arises over the proper school of enrollment for a child suffering
from homelessness, federal law protects both parent and child. The McKinney-Vento

Homeless Assistance Act requires schools to immediately enroll a homeless child at the school where enrollment is sought by the parent, pending final resolution of a dispute resolution process. This "Pendency Provision" ensures that children suffering from homelessness remain in the classroom pending the outcome of the dispute so that their education is not further disrupted.

Ms. Martin filed this action *pro se* on behalf of herself and J.M. alleging that Defendants violated the McKinney-Vento Act's Pendency Provision. [Docket No. 1 at 14.] She also asserted claims under the Individuals with Disabilities Education Act ("IDEA") on behalf of J.M.—who has autism and receives an Individualized Education Program ("IEP") under the IDEA—as well as under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

Because Third Circuit precedent forbids a nonlawyer *pro se* parent from asserting claims on behalf of her minor children, Ms. Martin cannot bring any claims on behalf of J.M. The Court will, however, appoint pro bono counsel on behalf of J.M. so that he may pursue his claims, if appropriate. And while Ms. Martin cannot sustain IDEA, ADA, or Rehabilitation Act claims on her own behalf, the Court finds that the District violated Ms. Martin's McKinney-Vento rights by failing to comply with the Act's Pendency Provision. J.M. should have been immediately enrolled at Lenape High School pending the dispute resolution process regarding whether Ms. Martin and J.M. resided in Mount Laurel or Maple Shade. Therefore, the Court will **GRANT** Plaintiff's Motion for Summary Judgment on her McKinney-Vento Act claim.

2

## II.      FACTUAL BACKGROUND

From February 2020 to March 2022, Ms. Martin and her two children, J.M. and L.M., lived and were permanently housed in Maple Shade, New Jersey. The children attended Maple Shade public schools. [Docket No. 16 ("Pl.'s Br.") at 2.] J.M. has autism and receives an IEP under the IDEA. [Docket No. 1 at 16.] He wants to be an engineer when he grows up. [*Id.* at 17.]

Plaintiff disenrolled J.M. from Maple Shade High School after an incident where J.M. apparently misgendered another student. [Pl.'s Br. at 2.][1] She moved the children to Torrance, California in April where J.M. attended ninth grade at West High School in the Torrance Unified School District. [*Id.*] Ms. Martin and the children were homeless in California, residing at a Marriot Residency Inn. Because the children were homeless, Torrance Unified School District enrolled J.M and his sister, L.M., under homelessness status pursuant to the McKinney-Vento Act. [*Id.*] The McKinney-Vento Act allows children suffering from homelessness to attend public school in the district where they have been displaced rather than attending their "school of origin," the last school they attended while housed. 42 U.S.C. §§ 11432(g)(3)(A)(i), (g)(3)(I)(i).

Ms. Martin and the children moved back to New Jersey in the summer. [*Id.*] Still homeless, they moved into a Hilton Homewood Suites in Mount Laurel. [Docket No. 1 at 14.] In the beginning of September, the family moved to a Marriot Residence Inn, also in Mount Laurel. [*Id.*] Later (it is not clear exactly when), the family moved

---

[1] It is not clear whether Maple Shade High School expelled J.M. or whether Ms. Martin voluntarily disenrolled him.

to a "hotel" run by Catholic Charities located in Maple Shade. [Docket No. 28 ("Pl.'s Supp. MSJ Exs.") at 2.]

Ms. Martin attempted to enroll her children in the Mount Laurel public schools for the 2022–23 school year. She successfully enrolled L.M. at Harrington Middle School in Mount Laurel under homelessness status pursuant to the McKinney-Vento Act. [Docket No. 17 ("Pl.'s MSJ Exs.") at 10.] But the Lenape Regional High School District—which serves high school students in Mount Laurel—refused to enroll J.M. at Lenape High School. Patricia Piserchia, the District's McKinney-Vento Homeless Education Liaison, informed Ms. Martin that the District would not enroll J.M. at Lenape High School because Ms. Martin attempted to enroll him as a student after she and the children moved out of the Mount Laurel Marriott and back into Maple Shade. [Docket No. 1 at 11; Pl.'s MSJ Exs. at 1; Pl.'s Supp. MSJ Exs. at 2.] Ms. Martin disputed this. She alleges that she and the children resided at the Mount Laurel Marriott between September 2 and September 20, [*see* Docket No. 1 at 11], and that she attempted to enroll J.M. at Lenape High School during that period having provided the registration secretary at Lenape High School with hotel receipts, [*id.*].[2] A representative from Lenape High School, however, spoke with a clerk at the Mount Laurel Marriott who stated that the hotel's records indicated that Ms. Martin checked out of the hotel on September 15, after Ms. Martin attempted to enroll J.M. at Lenape

---

[2] Contradicting her claim that she checked out of the hotel on September 20, Ms. Martin also apparently told James Kehoe, the District's Security and Emergency Management Coordinator that she checked out of the Mount Laurel Marriot on September 17. [Pl.'s Supp. MSJ Exs. at 2.]

High School. [Pl.'s Supp. MSJ Exs. at 1; Docket No. 1 at 11.] Ms. Piserchia explained to Ms. Martin via email that "[u]nless [Martin's family was] living in [Mount] Laurel, either as a resident or displaced," J.M. would be "[un]able to register at Lenape High School" and would have to, instead, attend Maple Shade High School, the last school he attended while housed and located in his current place of residence. [Docket No. 1 at 11.]

As a result of the disagreement between Ms. Martin and the District, J.M. did not enroll at any school for his tenth-grade year. Instead, he took classes virtually through Khan Academy. [*Id*. at 16.] Ms. Martin alleges that she was fired from her job as a result of having to stay home with J.M. [*Id*. at 17.] J.M. spent his eleventh-grade year taking courses through PerformCare, a behavioral health administrative services organization. [*Id*.]

## III.     PROCEDURAL BACKGROUND

Ms. Martin filed this lawsuit, *pro se*, in the Superior Court of New Jersey on behalf of herself and J.M. alleging that the District and Ms. Piserchia violated the McKinney-Vento Act by refusing to enroll J.M. at Lenape High School and that the District's refusal to enroll J.M. constituted discrimination of his IEP under the IDEA, as well as under the ADA and Section 504 of the Rehabilitation Act. [Docket No. 1 at 6.] Although the Complaint is styled as a "motion," its first line states that Ms. Martin

brings the case "on behalf of herself and her child." [Docket No. 1 at 14.] She seeks compensatory and punitive damages.[3]

Defendants removed the Complaint to this Court and filed an Answer. [Docket No. 1 at 1; Docket No. 4.] Plaintiff filed a motion for pro bono counsel which Magistrate Judge Pascal denied without prejudice. [Docket Nos. 15, 20.] Ms. Martin filed the instant summary judgment motion on behalf of herself and J.M., [Pl.'s Br. at 1], arguing that there was no genuine dispute of material fact that J.M. should have immediately been enrolled at Lenape High School pending the dispute resolution process and that Defendants violated J.M.'s IDEA rights by failing to enroll him in the District, [*see id*.].[4] Defendants cross-moved for judgment on the pleadings and opposed Plaintiff's summary judgment motion arguing that the Court has no subject matter jurisdiction to hear claims brought on behalf of J.M. because Third Circuit precedent expressly prohibits a non-lawyer *pro se* parent from bringing claims on behalf of her minor children. [Docket No. 21 ("Defs.' Br.") at 6–8 (citing *Osei–Afriyie v. Medical College of Pa.*, 937 F.2d 876 (3d Cir. 1991)).] To the extent she brings claims on her own behalf, Defendants argue that Plaintiff failed to state a claim under the IDEA, the ADA, or Section 504 of the Rehabilitation Act because she failed to exhaust her

---

[3] Plaintiff's Motion for Summary Judgment states that she seeks damages "in the amount o[f] $370,000.00." [Pl.'s Br. at 2.] The breakdown of punitive and compensatory damages Ms. Martin seeks is $200,000.00 "for injury to [J.M.]," "$77,000.00 for [her] lost wages [between] September 8, 2022 [to] November 21, 2023," and "[t]he remaining $98,000.00 [to] cover the amount of expenses and debt that came as [a] result of discrimination by the [D]efendants." [Pl.'s Br. at 2.]
[4] Plaintiff's Motion for Summary Judgment does not reference the ADA or Rehabilitation Act claims.

6

administrative remedies prior to filing suit. [Defs.' Br. at 8–17.] And with respect to any McKinney-Vento Act claim, Defendants argue that the District complied with all procedural requirements of the Act by directing Ms. Martin to register J.M. at Maple Shade High School, his school of origin. [*Id.* at 19–20.]

## IV.    LEGAL STANDARD

### A.    Rule 12(c) Standard

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains, and the movant is entitled to judgment as a matter of law. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005). In challenging lack of subject matter jurisdiction on a Rule 12(c) motion, the court will treat a "motion for judgment on the pleadings based upon a lack of subject matter jurisdiction … as a Rule 12(b)(1) motion to dismiss the complaint." *Ricciardi Family LCC v. U.S. Postal Service*, 2011 WL 3022521, at *2 (D.N.J Jul. 22, 2011). A motion to dismiss for lack of subject matter jurisdiction can present either a facial or factual challenge. *Hartford Ins. Co. of Midwest v. Dana Transp. Inc.*, 2017 WL 3641745, at *3 (D.N.J. Aug. 23, 2017). In a facial attack, the movant asserts that, taking the allegations as true, the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Id*. On the other hand, a factual attack on subject matter

jurisdiction "challeng[es] the truth (or completeness) of the jurisdictional allegations set forth in the complaint." *Id*. Here, Defendants' challenge to jurisdiction is facial.

*Pro se* complaints must be "construed liberally to raise the strongest arguments it suggests but must still state a plausible claim for relief." *Pereira v. Fed. Govt of U.S.*, 2023 WL 3271168, at *1 (D.N.J. May 4, 2023) (cleaned up). Nonetheless, *pro se* complaints are still "bound to the essential obligation of facial plausibility." *Id.* (internal quotation marks omitted) (quoting *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019)). Thus, a *pro se* litigant must "allege sufficient facts in their complaints to support a claim," and they are "not exempt from complying with federal pleading standards." *Waiters v. Republic Bank*, 2024 WL 1928331, at *1 (D.N.J. May 2, 2024) (citations omitted).

### B.   Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits ... or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." FED. R. CIV. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, (1986). "More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party." *S.M. v. Marlboro Twp. Bd. of Educ.*, 2013 WL 2405438, at *3 (D.N.J. May 31, 2013) (citing *Anderson*, 477 U.S. at 248–49). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphases removed).

## V. DISCUSSION

### A. Claims Brought By J.M. and Ms. Martin Against Ms. Piserchia

Plaintiff sued both the District and Ms. Piserchia, the District's McKinney-Vento student liaison for damages. It is not clear whether Ms. Piserchia has been sued in her individual capacity, her official capacity, or both. Assuming Ms. Piserchia is sued in her official capacity, that claim will be **DISMISSED WITH PREJUDICE** as duplicative of her damages claim against the District. *See Cooper v. City of Paterson*, 2024 WL 1298917, at *6 (D.N.J. Mar. 27, 2024) (dismissing official capacity claim against municipal officer as duplicative of claim brought against municipality) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). And assuming Ms. Piserchia is sued in her individual capacity for violations of the IDEA, ADA, or Rehabilitation Act, those claims are also **DISMISSED WITH PREJUDICE**. The Third Circuit and federal district courts in the Third Circuit have held that there is no personal capacity liability

9

against municipal officials for claims under the Rehabilitation Act, ADA, or the IDEA. *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir. 2002) (per curiam) (no personal liability for Rehabilitation Act or ADA Title III claims and collecting cases holding no personal liability for Title I and Title II ADA claims); *Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) (collecting cases and holding no personal liability for IDEA, Rehabilitation Act or ADA claims); *P.N. v. Greco*, 282 F. Supp.2d 221, 239 (D.N.J. 2003) (holding no personal liability for IDEA claims); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 557 (D.N.J. 2000) (collecting cases and holding no personal liability for Rehabilitation Act and Title II ADA claims).[5] The remainder of the Court's analysis proceeds only against the District.

---

[5] The Court leaves for another day the question of whether a plaintiff can maintain an individual capacity claim under the McKinney-Vento Act given the ambiguity regarding whether Ms. Piserchia has been sued in her individual capacity at all and because it is granting leave to file an amended complaint through pro bono counsel. [*See infra* at 16–17, 40–41.] As the Third Circuit has explained, when it is ambiguous whether an official has been sued in her individual or official capacity, the proper procedure is to provide leave to amend for the plaintiff to specify the capacity in which the defendant has been sued because a defendant sued in her individual capacity needs adequate notice that her personal assets are at stake. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21, (1991). Although the Complaint demands punitive damages and Defendants answered the Complaint with a defense of immunity—both factors indicating an intent to bring an individual capacity suit, *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)—it does not specify that the punitive damages demand is against Ms. Piserchia specifically. *Day v. New Jersey Dep't of Corr.*, 2022 WL 170855, at *5 n.5 (D.N.J. Jan. 19, 2022). Moreover, any claim for punitive damages against Ms. Piserchia in her individual capacity appears deficient as the Complaint is without any allegations for the Court to infer that Ms. Piserchia acted with reckless or callous indifference, or with evil motive or intent. *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

### B.  Claims Brought By Ms. Martin on Behalf of J.M

**1.**  ***Third Circuit Precedent Prevents Non-Lawyer pro se Parents From Asserting Claims on Behalf of Their Minor Children***

The Third Circuit has consistently held that a non-lawyer *pro se* parent cannot bring a lawsuit on behalf of her minor child. *Osei–Afriyie v. Medical College of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("[A] non-lawyer appearing *pro se* [is] not entitled to play the role of attorney for [her] children in federal court."); *Pinkney v. City of Jersey City Dep't of Hous. & Econ. Dev.*, 42 F. App'x 535, 536 (3d Cir. 2002) ("[A] guardian or parent cannot represent an incompetent adult in the courts of this Circuit without retaining a lawyer."). Although litigants have a right to bring and prosecute a lawsuit on their own behalf, 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel."), and the Federal Rules of Civil Procedure permit a minor to bring a lawsuit through a guardian, FED. R. CIV. P. 17(c),[6] the Third Circuit in *Osei-Afriyie*, agreeing with the Second and Tenth Circuits, held that non-lawyer *pro se* parents cannot prosecute claims on behalf of their minor children reasoning that "[t]he choice to appear *pro se* is not a true choice for minors who under state law … cannot determine their own legal actions." *Id.* at 882–83 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59 (2d Cir. 1990)

---

[6] In New Jersey, minors lack capacity to bring lawsuits on their own. N.J.S.A. § 9:17B-3; FED. R. CIV. P. 17(b)(1) (capacity to sue or be sued is "determined … by the law of the individual's domicile").

(citing *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986)).[7] As the Third Circuit later elaborated, *Osei-Afriyie*'s rule that a *pro se* non-lawyer may not represent another person in federal court finds its roots in the common law and is based on "two cogent policy considerations"—(i) the "strong state interest in regulating the practice of law"; and (ii) the importance of the rights at issue during litigation requiring a licensed attorney more skilled in the practice of law and who is subject to ethical responsibilities and obligations as well as liability for malpractice. *Collinsgru v. Palmyra Bd. of Educ.*,

---

[7] The "counsel mandate" has come under recent scrutiny. The Fifth Circuit recently refused to adopt an absolute bar on *pro se* parent representation of their minor children. *Raskin on behalf of JD v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 282 (5th Cir. 2023). For its part, the Fifth Circuit explained that while "[n]othing in § 1654 alters [the] common-law rule or its corollary that non-attorney parents cannot act as attorneys for their children," and that a child's case could belong to the parent under § 1654 "if some other source of law alters the common-law backdrop." *Id.* at 284, 286–87 (remanding for district court to consider whether federal or state law authorized plaintiff-parent to proceed *pro se* on behalf of her children. The *Raskin* majority criticized the absolute bar on *pro se* parental representation of children by pointing out that the rule "may not protect children's rights at all" because when a child is unable to obtain counsel the absolute bar may "undermine[] [the] child's interest in having claims pursued for him or her," which would ultimately "force them out of court all together." *Id.* at 286. Additionally, the Ninth Circuit, applying the counsel mandate under circuit precedent (but appearing to invite potential en banc review of the issue), noted that the counsel mandate "unquestionably raises concerns with grave implications for children's access to justice." *Grizzell v. San Elijo Elementary Sch.*, --- F.4th ----, 2024 WL 3682780, at *3 (9th Cir. Aug. 7, 2024).

161 F.3d 225, 231 (3d Cir. 1998), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).[8]

Generally, courts in this District have described the rule against non-lawyer parents representing their children *pro se* as an issue of standing. *Jackson v. Bolandi*, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("Here, *pro se* [p]laintiff does not have standing to assert any claims on behalf of her daughter."). In *Jackson*, the plaintiff brought suit on behalf of her daughter in federal court, and the defendants moved to dismiss for lack of subject matter jurisdiction. *Id.* at *1–3. The Court, surveying Third Circuit case law post-*Osei-Afriyie*, explained that the plaintiff-parents "[could not] represent their minor children in federal court" because they "[did] not have standing to prosecute any of their son's claims." *Id.* at *3–4; *see also Woodruff ex rel. B.W. v. Hamilton Twp. Pub. Sch.*, 2007 WL 4556968, at *3, *5 (D.N.J. Dec. 20, 2007), *aff'd* 305

---

[8] But the parent-child relationship is fundamentally different from the relationship between an unlicensed attorney and her client. *Raskin*, 69 F.4th at 298 (Oldham, J., dissenting, in part, and concurring, in part). Parents make life-altering decisions on behalf of their children—both good and bad—all of the time. *Id.* And we let them do so even where those decisions have legally binding consequences. *See, e.g.*, N.J.S.A. § 3B:31-15 (parental guardian of property on behalf of minor child can make legally binding decisions with respect to that property); *Hojnowski v. Vans Skate Park*, 901 A.2d 381 (N.J. 2006) (parent's agreement to arbitrate is valid and enforceable against any tort claims asserted on a minor's behalf); Lisa V. Martin, *No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22*, 71 FLA. L. REV. 831, 870 (2019) (surveying scope of parental authority over children's legal rights). Nonetheless, *Osei-Afriyie* is binding on this Court.

F. App'x 833 (3d Cir. 2009) (holding that parents lacked standing and dismissing child's claims for lack of subject matter jurisdiction).[9]

Because "Third Circuit precedent is clear that a non-lawyer appearing *pro se* is not entitled to play the role of attorney for [her] children in federal court," *Ciarrocchi v. Clearview Reg'l High Sch. Dist.*, 2010 WL 2629050, at *1 (D.N.J. June 25, 2010) (quoting *Osei–Afriyie*, 937 F.2d at 882–83), J.M.'s claims will be dismissed **WITHOUT PREJUDICE**. But as described below, the Court will appoint pro bono counsel for J.M. so that counsel may properly assess his claims in an amended complaint. *Hamilton Twp. Pub. Sch.*, 2007 WL 4556968, at *5 (D.N.J. Dec. 20, 2007) (granting minor child leave to amend complaint through counsel where claims were originally filed through non-lawyer *pro se* parents).[10]

### 2. *The Court Will Appoint pro bono Counsel on Behalf of J.M.*

The Court will exercise its discretion to appoint pro bono counsel on behalf of J.M. As the Third Circuit explained in *Osei–Afriyie*, one option for federal courts faced

---

[9] Judge Oldham has questioned lack of Article III standing as a rationale to prevent non-lawyer *pro se* parents from asserting claims on behalf of their minor children. *See Raskin*, 69 F.4th at 288 (Oldham, J., dissenting, in part, and concurring, in part) (explaining that District Court erred in dismissing plaintiff's case for lack of subject matter jurisdiction based on "[Plaintiff's] purported incapacity to sue on [her] children's behalf").

[10] Federal Civil Procedure Rule 15 provides that leave to file an amended pleading "shall be freely given as justice so requires." FED. R. CIV. P. 15(a). "The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities." *Certain Underwriters at Lloyd's of London v. Alesi*, 843 F. Supp. 2d 517, 534 (D.N.J. 2011) (citing *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir. 1990); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

with a complaint brought by *pro se* parents asserting claims on behalf of their minor child is to "exercise its discretion … to appoint counsel to represent the [child.]" *Osei–Afriyie*, 937 F.2d at 883. "Where an unrepresented [p]laintiff in a civil suit is indigent, and where good cause exists for the appointment of pro bono counsel … the District Court has the discretion and authority to appoint pro bono counsel even in the absence of a specific motion to do so." *Williams v. Hayman*, 488 F. Supp. 2d 446, 447 (D.N.J. 2007) (citing *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993) (emphasizing that "appointment of counsel [for indigent litigants] may be made at any point in the litigation and may be made by the district court *sua sponte*")).

Good cause exists here.[11]  Judge Pascal, in denying Ms. Martin's motion for pro bono counsel, only evaluated the claims asserted on behalf of Ms. Martin. [*See generally* Docket No. 15.] But the Complaint alleges claims "on behalf of [Ms. Martin] *and* her child." [Docket No. 1 at 14 (emphasis added).] Properly considering the *Tabron* factors with respect to J.M.'s claims justifies the appointment of pro bono counsel on his behalf. Under *Tabron*, the Court must first determine whether the litigant's overarching claim has "some merit in fact and law." 6 F.3d at 155. If so, the Court reviews an additional six factors:

---

[11] The Court finds that Plaintiff is indigent. In her motion to appoint pro bono counsel, Plaintiff alleged that she was unable to afford counsel and was still suffering from homelessness. [Docket No. 10 at 3.] Additionally, prior to removal, the New Jersey Superior Court permitted Plaintiff to proceed without payment of fees. *See Martin v. Piserchia*, No. BUR-L-001898-23, Trans. ID LCV20233093883 (N.J. Super. Oct. 11, 2023).

(1)    the plaintiff's ability to present his or her own case;
(2)    the complexity of the legal issues;
(3)    the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
(4)    the amount a case is likely to turn on credibility determinations;
(5)    whether the case will require the testimony of expert witnesses;
(6)    whether the plaintiff can attain and afford counsel on his own behalf.

*Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155-56, 157 n.5).

As a threshold matter, J.M. may have meritorious claims under the McKinney-Vento Act. [*See infra* at 34–38.] Although his IDEA, ADA, and Rehabilitation Act claims appear to be unexhausted, [*see infra* at 19–21], the Court will allow pro bono counsel to determine if there is a good faith basis to reassert those claims on behalf of J.M. and/or whether those claims remain exhaustible. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 609 (3d Cir. 2015) ("IDEA parents must file their due process complaint within two years of the date they 'knew or should have known' of the violation.") (quoting 20 U.S.C. § 1415(f)(3)(C)).

The remaining *Tabron* factors, on balance, support appointment of pro bono counsel for J.M.  First, under Third Circuit precedent, J.M.'s "ability to present his [] case" is impossible without a lawyer or until he reaches the age of majority. *Tabron*, 6 F.3d at 156; *see also Osei–Afriyie*, 937 F.2d at 882. Appointing pro bono counsel for J.M. thus ensures that his legal interests are properly represented. *See L.S. v. Lenape High Sch.*, No. CV 16-1468 (JBS/KMW), Docket No. 37 (D.N.J. Aug 3, 2016) (*sua sponte* appointing counsel where *pro se* plaintiff-parent brought claims on behalf of minor

daughter "to ensure that [the child's] legal interests are properly represented" because nonlawyer plaintiff-parent could not otherwise represent her minor daughter in federal court). Waiting until J.M. reaches the age of majority makes little practical sense. He has viable claims right now that this Court is familiar with. Second, this case involves complex and novel issues of law, including under the McKinney-Vento Act. Third, at least with respect to any McKinney-Vento claim, J.M. will likely need factual investigation to prove McKinney-Vento liability under *Monell*. [*See infra*. at 38–41.] Finally, J.M., a minor suffering from homelessness, plainly cannot attain and afford counsel on his own behalf.[12] The Court will enter an appropriate Order requesting the appointment of pro bono counsel to represent J.M.

### C.   Claims Brought By Ms. Martin on Her Own Behalf

#### 1.   *Ms. Martin Can Assert IDEA and McKinney-Vento Act Claims on Her Own Behalf But Not ADA and Rehabilitation Act Claims*

Although Ms. Martin cannot bring claims *pro se* on behalf of J.M., Ms. Martin can assert IDEA and McKinney-Vento Act claims on her own behalf. While Ms. Martin purported to assert claims on behalf of J.M., she also asserted each claim on her own behalf. The first paragraph of the document the Court construes as Ms. Martin's Complaint states unequivocally that she filed her Complaint "*on behalf of*

---

[12] It is not clear at this time to what extent the case is likely to turn on credibility determinations or whether the case will require the testimony of expert witnesses. Those factors are neutral at best.

*herself and her child.*" [Docket No. 1 at 14 (emphasis added).][13] But although she may assert IDEA and McKinney-Vento Act claims on her own behalf, Ms. Martin cannot assert ADA or Section 504 Rehabilitation Act claims on her own behalf.

### i.    *IDEA*

In *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007), the Supreme Court held that parents have substantive rights under the IDEA and may thus prosecute IDEA claims *pro se* on their own behalf. *Id.* at 522, 530–33. The Court expressly declined to answer the question of whether the "IDEA entitles parents to litigate their child's claims *pro se*." *Id.* at 535. Accordingly, and consistent with *Osei-Afriyie*, the Third Circuit has held post-*Winkelman* that "[w]ith the exception of an IDEA action on their own behalf, [parents] may not represent [their minor child] in the federal courts in this [C]ircuit." *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 (3d Cir. 2009) (citing *Osei–Afriyie*, 937 F.2d at 882). However, if a *pro se* parent does not make clear that an IDEA claim is brought on their own behalf rather than on behalf of their child, the claim should be dismissed. *See Ho v. Lower Merion Sch. Dist.*, 2024 WL 1007453 (3d Cir. Mar. 8, 2024) (district court did not err by refusing to construe the complaint as bringing IDEA claims on behalf of *pro se* parents); s*ee also Woodruff*, 2007 WL 4556968, at *5 (similar). As described above, the Court reads the

---

[13] Ms. Martin describes this document as a "motion." [Docket No. 1 at 14.] But the Court easily construes it as a pleading setting forth, in Ms. Martin's first filing, "a short and plain statement of the claim showing that [she] is entitled to relief." FED. R. CIV. P. 8(a)(2).

Complaint as bringing each claim, including under the IDEA, on behalf of both Ms. Martin and her son. [*See supra* at 17–18.]

### ii.    *McKinney-Vento Act*

Ms. Martin can bring a McKinney-Vento claim on her own behalf through 42 U.S.C. § 1983. The Court's analysis of that issue follows. [*See infra* at 25–33.]

### iii.    *ADA and Rehabilitation Act*

Ms. Martin cannot assert ADA and Rehabilitation Act claims based upon alleged discrimination against J.M. Courts in this Circuit have consistently held that parents of children that have allegedly faced disability discrimination do not have standing to assert ADA and Rehabilitation Act claims on their own behalf. *C.M. v. Pemberton Twp. High Sch.*, 2017 WL 384274, at *3 (D.N.J. Jan. 27, 2017) (Bumb, J.) (collecting cases holding that parents cannot assert ADA and Section 504 Rehabilitation Act claims based on alleged violations of their child's rights). Those claims belong solely to the child. Therefore, Plaintiff's ADA and Rehabilitation Act claims will be **DISMISSED WITH PREJUDICE**.

### 2.    *Plaintiff Failed to Exhaust her IDEA, ADA, and Rehabilitation Act Remedies*

In order to properly bring an IDEA claim before a federal court, a plaintiff must have first exhausted her administrative remedies. *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). A federal court cannot exercise subject matter jurisdiction over a dispute unless the state's administrative remedies have been exhausted, so, in the "absen[ce] [of] the application of any exceptions, all

of [a party's] claims made pursuant to the IDEA require exhaustion." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 273 (3d Cir. 2014); *see also T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 185 (3rd Cir. 2021) (holding that absent certain exceptions, "failure to exhaust [an IDEA claim] will deprive a federal court of subject matter jurisdiction") (internal quotation marks and citation omitted).

"The IDEA establishes a detailed administrative mechanism for resolving disputes about whether an educational agency has complied with the [statute]." *Sch. Dist. of Philadelphia*, 4 F.4th at 184. It requires the filing of a complaint resolved through administrative proceedings and appeals before an aggrieved party may bring a civil action in a state court or United States district court. 20 U.S.C. § 1415(i)(2). IDEA's "detailed statutory regime makes it clear that Congress intended plaintiffs to complete the administrative process before resorting to federal court." *Sch. Dist. of Philadelphia*, 4 F.4th at 185 (cleaned up).

Ms. Martin has failed to allege or provide evidence that she has exhausted her IDEA administrative remedies. She has not alleged or provided evidence that she ever opened an IDEA complaint or that the District held (or refused to hold) a due process hearing to resolve any complaint. There are also no allegations or evidence that the exhaustion of Plaintiff's administrative remedies would have been futile, inadequate, or would have imposed "severe or irreparable harm." *New Jersey Prot. & Advocacy, Inc.*

*v. New Jersey Dept. of Educ.*, 563 F. Supp. 2d 474, 485–86 (D.N.J. 2008). Her IDEA claims will be dismissed as unexhausted.[14]

Additionally, and in the alternative, even if Ms. Martin could bring ADA and Rehabilitation Act claims on her own behalf, [*supra* at 19], she also failed to exhaust her administrative remedies for those claims. Although there are no state exhaustion requirements for actions brought under the ADA or Section 504 of the Rehabilitation Act, *Hornstine v. Twp. of Moorestown*, 263 F. Supp. 2d 887, 900 (D.N.J. 2003) (citing *Jeremy H. v. Mount Lebanon Schl. Dist.*, 95 F.3d 272, 281–82 (3d Cir.1996)), "ADA and Rehabilitation Act claims related to IDEA violations … [must] be submitted in the first instance to the administrative tribunal when the relief sought is essentially the same as that available under the IDEA." *R.R. v. Manheim Twp. School Dist.*, 412 Fed. App'x. 544, 550 (3d Cir. 2011); *Hornstine*, 263 F. Supp. 2d at 900 ("[I]n cases in which it appears that a plaintiff has cloaked an IDEA claim as an ADA, [or] Rehabilitation Act … action in an effort to avoid application of the IDEA's distinct exhaustion requirement, courts will require that plaintiff to exhaust the state administrative remedies mandated for IDEA claims.").

---

[14] Dismissal of Ms. Martin's IDEA claim will be **WITHOUT PREJUDICE** as that claim may remain exhaustible. 20 U.S.C. § 1415(f)(3)(C).

### 3.   *McKinney-Vento Act Claims*

#### i.   *Statutory Framework*

Passed to address "the critically urgent needs of the homeless," 42 U.S.C. § 11301(b)(2), the McKinney-Vento Act provides a broad range of services and assistance to homeless individuals and families, including for the education of children suffering from homelessness. The Act defines "homeless children and youths" as "individuals who lack a fixed, regular, and adequate nighttime residence," including "children and youths … living in motels [or] hotels … due to the lack of alternative adequate accommodations." 42 U.S.C. §§ 11434a(2)(A), (2)(B)(i). Because "[h]omelessness is not sufficient reason to separate students from the mainstream school environment," the Act requires each State to "ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education … as provided to other children and youths." 42 U.S.C. §§ 11431(1), (3).

McKinney-Vento authorizes the Secretary of Education to grant funds to States that implement a plan complying with the commands of the Act. 42 U.S.C. § 11432(a); N.J.A.C § 6A:17-1.1, *et seq.* (implementing the McKinney-Vento Act in New Jersey). States, in turn, "make subgrants to local educational agencies ("LEAs") for the purpose of facilitating the identification, enrollment, attendance, and success in school of homeless children and youths." 42 U.S.C. § 11433(a)(1).[15]

---

[15] An LEA is defined as "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to

Relevantly, the Act requires each LEA, "according to the child's or youth's best interest," to "continue the child's or youth's education in the [child's] school of origin for the duration of homelessness" or "enroll the child or youth in any public school that nonhomeless students who live in the attendance area in which the child or youth is actually living are eligible to attend." 42 U.S.C. §§ 11432(g)(3)(A)(i)–(ii). The Act presumes that keeping the child in their school of origin—"the school that [the] child or youth attended when permanently housed or the school in which the child or youth was last enrolled"—is in the child's best interests. *Id.* §§ 11432(g)(3)(I)(i), (g)(3)(B)(i). But that presumption may be overridden when keeping a child in the school of origin is "contrary to the request of the child's or youth's parent or guardian." *Id.* § 11432(g)(3)(B)(i). Regardless of whether a parent prefers the school of origin or the school of residence, enrollment at the preferred school must be immediate and without regard to "records normally required for enrollment" such as proof of residency. *Id.* § 11432(g)(3)(C)(i)(I).

When a dispute arises over eligibility, school selection or enrollment, McKinney-Vento Act's "Pendency Provision" requires that "the child or youth shall be immediately enrolled in the school in which enrollment is sought, pending final resolution of the dispute, including all available appeals." *Id.* § 11432(g)(E)(i). A

---

perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or of or for a combination of school districts or counties that is recognized in a State as an administrative agency for its public elementary schools or secondary schools." 42 U.S.C. § 11434a (incorporating by reference 20 U.S.C. § 7801(30)(A)).

dispute requires an LEA to provide parents with "a written explanation" of the school's decision regarding school selection or enrollment "including the rights of the parent … to appeal such decisions." *Id*. § 11432(g)(3)(E)(ii). The policy rationale of the Pendency Provision is "that homeless child[ren] [should] not suffer while a school district determines whether he or she is properly enrolled[.]" *L.R. ex rel. G.R. v. Steelton-Highspire Sch. Dist.*, 2010 WL 1433146 at *5 (M.D. Pa. Apr. 7, 2010) (citing 42 U.S.C. § 11432(g)(3)(E)(i)); *see also* John Wong, et al.*, The McKinney-Vento Homeless Assistance Act: Education for Homeless Children and Youths Program: Turning Good Law into Effective Education*, 11 GEO. J. POVERTY L. & POL'Y 283, 295 (2004) (explaining that the policy rationale of the Pendency Provision is that "children … should not be waiting in shelters, motels and other places, deprived of the same free education afforded to all children and youth, while adults try to sort through and settle jurisdictional issues, record verifications, and other barriers").

Consistent with the requirements of the Act, New Jersey's McKinney-Vento implementing legislation "descr[ibes] [] procedures for the prompt resolution of disputes regarding the educational placement of homeless children and youths." 42 U.S.C. § 11432(g)(1)(C); N.J.A.C § 6A:17-2.7 (governing New Jersey McKinney-Vento Act disputes and appeals). New Jersey's McKinney-Vento implementing legislation provides that:

> (a) When a dispute occurs regarding the determination of homelessness or the determination of the school district of enrollment made by the school district of [origin], the chief school administrator(s), or the chief school administrator's designee(s), of the involved school district(s) or the child's or youth's parent(s) shall immediately notify the executive

county superintendent. In consultation with the Department [of Education]'s McKinney-Vento Homeless Education Coordinator, or the coordinator's designee, the executive county superintendent shall immediately decide the child's or youth's status. If a dispute remains between the parent and the involved school district(s) following the executive county superintendent's determination, the parent or the involved district board(s) of education may appeal to the Commissioner for determination pursuant to N.J.A.C. 6A:3, Controversies and Disputes.

....

(c) Any dispute or appeal shall not delay the homeless child's or youth's immediate enrollment or continued enrollment in the school district. The homeless child or youth shall be enrolled in the school district in which enrollment or continued enrollment is sought by the parent, pending resolution of the dispute or appeal.

N.J.A.C § 6A:17-2.7(a), (c). "Any determination or decision of the Commissioner [of Education] is appealable to the Appellate Division of the [New Jersey] Superior Court." N.J.A.C. § 6A:3-1.14(b).

### ii.  *The McKinney-Vento Act is Enforceable Through 42 U.S.C. § 1983*

The McKinney-Vento Act does not contain an express private right of action. That is, the Act's text contains no provisions indicating that "a private party may bring suit to enforce it." *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004). Sometimes, however, federal statutes without an express private right of action may be enforced vis-à-vis 42 U.S.C. § 1983 which provides a private right of action to enforce a "deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*." 42 U.S.C § 1983 (emphasis added); *see Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 178, 183 (2023) ("Although federal

statutes have the potential to create § 1983-enforceable rights, they do not do so as a matter of course"); *Maine v. Thiboutot*, 448 U.S. 1 (1980) (holding that Section 1983 authorizes suits to enforce individual rights under federal statutes as well as the Constitution). The Supreme Court recently reiterated that Spending Clause legislation may be enforceable through Section 1983. *Talevski*, 599 U.S. at 166 (declining to hold that "Spending Clause statutes do not give rise to privately enforceable rights under Section 1983").

The Supreme Court's test to determine whether a particular federal law secures rights enforceable through Section 1983 comes from *Gonzaga University v. Doe*, 536 U.S. 273 (2002). Under *Gonzaga*, courts "must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 283, 285–86). The *Gonzaga* test is satisfied where the statute in question is "'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Talevski*, 599 U.S. at 183 (quoting *Gonzaga* 536 U.S. at 284, 287)). A court must determine "whether Congress intended to create a federal right" for the identified class rather than determining whether the plaintiff falls "within the general zone of interest that the statute is intended to protect." *Gonzaga*, 536 U.S. at 283. If a statute satisfies this test, it is "presumptively enforceable" under Section 1983. *Id.* at 284.

The presumption of enforceability, however, may be rebutted where Congress has created a comprehensive remedial scheme demonstrating an intent to preclude enforcement of the statute under Section 1983. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 113 (2005). That intent "may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

Although appearing to be a question of first impression in this Circuit,[16] other courts have permitted enforcement of McKinney-Vento through Section 1983. *Lampkin v. D.C.*, 27 F.3d 605 (D.C. Cir. 1994) (holding, pre-*Gonzaga*, that section 11432(e)(3) of the McKinney-Vento Act conferred enforceable rights on parent plaintiffs to bring suit under Section 1983); *Nat'l L. Ctr. on Homelessness & Poverty, R.I. v. New York*, 224 F.R.D. 314, 321 (E.D.N.Y. 2004) (certifying class of parents of homeless children and holding that McKinney-Vento Act created individually enforceable rights under Section 1983). This Court reaches the same conclusion—"it is clear that Congress intended that the McKinney[-Vento] Act confer individually

---

[16] The Third Circuit has, however, assumed without deciding that plaintiff-parents could bring suit to enforce violations of the McKinney-Vento Act. *G.S. By J.S. v. Rose Tree Media Sch. Dist.*, 914 F.3d 206, 211 (3d Cir. 2018) (per curiam) (holding in suit brought by plaintiff parents that school district was required to enroll child under McKinney-Vento Act).

enforceable rights" on parent-plaintiffs enforceable through Section 1983. *Nat'l L. Ctr. on Homelessness & Poverty, R.I.*, 224 F.R.D. at 319.[17]

### a.   *Congressional Intention to Create a Federal Right*

McKinney-Vento "unambiguously confer[s]" rights specifically benefitting homeless children and their parents. *Gonzaga*, 536 U.S. at 283. The Act is replete with statutory language specifically conferring rights on the parents of homeless children. For example, parents of homeless children are afforded the right to determine, "according to their child's best interest," whether their child should be enrolled in the school of origin or the school of residence. 42 U.S.C. §§ 11432(g)(3)(A)(i)–(ii), (g)(3)(B)(i). Further, LEAs must "inform[] the parents or guardians of homeless children … of the educational and related opportunities available to their children" and they must be provided "meaningful opportunities to participate in the education of their children." *Id.* § 11432(g)(6)(v). Parents must likewise be "fully informed" by LEAs "of all transportation services, including transportation to the school of origin" and must be "assisted in accessing transportation" for their child to the selected school. *Id.* § 11432(g)(6)(viii). Finally, and as relevant here, when an enrollment dispute arises, "the child or youth shall be immediately enrolled in the school in which enrollment is sought" by the parent "pending final resolution of the dispute, including all available appeals." *Id.* § 11432(g)(3)(E)(i). Parents must be provided "with a written explanation

---

[17] Ms. Martin did not mention Section 1983 in her Complaint. However, the Court, in reading her *pro se* Complaint liberally, will construe it as asserting a McKinney-Vento Act claim under Section 1983.

of any decisions related to school selection or enrollment made by the school, the [LEA], or the State educational agency involved, including the rights of the parent, guardian, or unaccompanied youth to appeal such decisions." *Id*. § 11432(g)(3)(E)(ii). Together, these provisions evidence an unmistakable Congressional intent to confer individually enforceable rights on specific individuals—the parents of children suffering from homelessness. *Gonzaga*, 536 U.S. at 284 ("For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'") (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 692, n.13 (1979)).

Each of these provisions is binding on Sates accepting federal funds for McKinney-Vento programs. *Gonzaga*, 536 U.S. at 282 ("[T]he provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.") (internal quotation marks omitted); *Lampkin*, 27 F.3d at 611 (explaining that the McKinney-Vento Act imposes "specific, mandatory terms"); *Nat'l L. Ctr. on Homelessness & Poverty, R.I.*, 224 F.R.D. at 319 ("[T]he Act imposes [] mandatory rather than hor[t]atory requirement[s] on [] States."). McKinney-Vento requires States to submit to the Secretary of Education "a plan to provide for the education of homeless children and youths within the State." 42 U.S.C. § 11432(g)(1). But it also requires States to actually implement and follow the plans that they submit. *Id*. § 11432(g)(2) ("Each plan adopted under this subsection shall also describe how the State *will* ensure that local educational agencies in the State *will* comply with the requirements of paragraphs (3) through (7)." (emphases added)). "Thus, unlike other spending provisions that do not confer individually enforceable rights, 'the McKinney-Vento

Act not only informs the State in great detail on how its plan is to be implemented, it imposes obligations that are independent of [submitting] the plan.'" *Nat'l L. Ctr. on Homelessness & Poverty, R.I.*, 224 F.R.D. at 320 (quoting *Lampkin*, 27 F.3d at 611 (cleaned up)). As such, McKinney-Vento is presumptively enforceable under Section 1983. *Gonzaga*, 536 U.S. at 284.

### b.  *Congressional Preclusion of a Section 1983 Remedy*

The Court also finds that the presumptive enforceability of McKinney-Vento under Section 1983 cannot be rebutted. *Rancho Palos Verdes*, 544 U.S. at 120. "The *sine qua non* of a finding that Congress implicitly intended to preclude a private right of action under § 1983 is incompatibility between enforcement under § 1983 and the enforcement scheme that Congress has enacted." *Talevski*, 599 U.S. at 187. Courts must apply "traditional tools of statutory construction to a statute's remedial scheme" to determine whether it is incompatible with Section 1983. *Id.*

The Court finds no incompatibility between the McKinney-Vento Act and Section 1983 enforcement of the rights secured by the Act. True, McKinney-Vento contemplates the *availability* of some sort of remedial scheme by providing that disputes over eligibility, school selection, or enrollment will be resolved through state administrative proceedings. 42 U.S.C. § 11432(g)(3)(E); N.J.A.C § 6A:17-2.7 (governing New Jersey McKinney-Vento disputes and appeals). But as the Supreme Court explained in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), "the availability of state administrative procedures ordinarily does not foreclose resort to

§ 1983." *Id.* at 523 (citing *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516 (1982)); *Blessing*, 520 U.S. at 347 ("[A] plaintiff's ability to invoke § 1983 cannot be defeated simply by the availability of administrative mechanisms to protect the plaintiff's interests.") (internal quotation marks and citation omitted); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 193 (3d Cir. 2004) (holding that Title XIX of the Social Security Act was enforceable under Section 1983 even though it allowed for a state administrative hearing). Any such state administrative procedures must still be *comprehensive. Wright v. Roanoke Redev. and Hous. Auth.*, 479 U.S. 418, 425 (1987) (statutory scheme must be "sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action").

As an initial matter "the implicit-preclusion inquiry looks to 'the *statute* creating the right' and any 'comprehensive enforcement scheme' Congress has created *in the statute* 'that is incompatible with individual enforcement under § 1983.'" *Talevski*, 599 U.S. at 190 (quoting *Rancho Palos Verdes*, 544 U.S. at 120 (first emphasis in original)). But McKinney-Vento itself does not actually create a comprehensive enforcement scheme. The Act directs the States to develop procedures for resolving enrollment disputes, 42 U.S.C. § 11432(g)(1)(C), but it does not prescribe what those procedures must be and what remedies are available. *Id.* § 11432(g)(3)(E)(iii) ("[T]he parent, … shall be referred to the [LEA] liaison … who shall carry out the dispute resolution process as described in paragraph (1)(C) as expeditiously as possible after receiving notice of the dispute."); *id.* § 11432(g)(1)(C) (requiring that a State plan include "[a]

31

description of procedures for the prompt resolution of disputes regarding the educational placement of homeless children and youths").

Compare McKinney-Vento's lack of specifically enumerated remedial scheme to a statute like the IDEA which the Third Circuit has held *cannot* be enforced through Section 1983 because its remedial scheme is comprehensive. In *Jersey City Public Schools*, the Third Circuit held that the IDEA was unenforceable through Section 1983 because the IDEA established a comprehensive remedial scheme. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007). Specifically, the Third Circuit noted that the IDEA "create[s] an express, private means of redress," in the statute itself allowing any aggrieved party to "present a complaint," "have the complaint investigated by the state educational agency," "avail itself of an impartial due process hearing," and "bring a civil action with respect to the complaint presented" where a court may grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education." *Id.* at 802 (internal quotation marks and citations omitted). Indeed, the IDEA enumerates in painstaking detail what procedures and remedies are available in the statutory text. *See* 20 U.S.C. § 1415. If Congress wanted to create a similar comprehensive enforcement mechanism in the McKinney-Vento Act, it knew how to do so. Instead, it delegated that task to the States.[18]

---

[18] Similarly, each Supreme Court case precluding a Section 1983 remedy based on statutory remedial scheme concerned "statutes with *self-contained* enforcement schemes that included statute-specific rights of action" that required plaintiffs to "comply with particular procedures and/or to exhaust particular administrative remedies under the

In any case, New Jersey's McKinney-Vento administrative procedures are hardly comprehensive. While the state administrative proceedings can resolve whether a child is or is not homeless or does or does not live in the school district where enrollment is sought, N.J.A.C § 6A:17-2.7, it will not resolve, as here, parental injuries suffered as a result of a school's failure to immediately enroll a student pending a determination on their homelessness status or the proper school of enrollment. *See N.J.*, 872 F. Supp. 2d at 212 (distinguishing between administrative claim pending before state administrative body and claim before court that school district violated procedural protections of McKinney-Vento including failure to comply with the Act's Pendency Provision). "Such limited state administrative procedures cannot be considered a 'comprehensive' scheme that manifests a congressional intent to foreclose reliance on § 1983." *Wilder*, 496 U.S. at 523. The Court thus cannot conclude that Section 1983 would thwart any Congressional remedial scheme inherent in the text and structure of the McKinney-Vento Act.

### iii. *The McKinney-Vento Act Does Not Impose an Exhaustion Requirement*

No court has held that McKinney-Vento imposes an exhaustion requirement. *See S.C. by & Through Melissa C. v. Riverview Gardens Sch. Dist.*, 2019 WL 922248, at *6 (W.D. Mo. Feb. 25, 2019) ("Defendants do not provide, and the Court has not found,

---

statute's enforcement scheme before suing under its dedicated right of action." *Talevski*, 599 U.S. at 189 (emphasis added). In each case, Section 1983 would have "'given [the] plaintiffs access to tangible benefits' as remedies that were 'unavailable under the statutes.'" *Id.* (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 254 (2009)). The McKinney-Vento Act, by contrast, does no such thing.

any case applying the IDEA's exhaustion requirements to a claim under the McKinney-Vento Act."). Even if there was such a requirement, the Court would not apply it here for two reasons. *First*, there is no evidence that the District, as it was required to do, notified Ms. Martin of her right to challenge its decision not to enroll J.M. through administrative procedures. 42 U.S.C. § 11432(g)(3)(E)(ii). When a State fails to inform an aggrieved party of administrative remedy rights as required by statute, exhaustion may be excused. *See Komninos*, 13 F.3d at 778 (recognizing exception to exhaustion of administrative remedies under the IDEA when parents are unaware of their right of administrative appeal because school district failed to notify them of their right to pursue an administrative remedy). *Second*, it makes no sense to impose an exhaustion requirement with respect to a denial of immediate enrollment. As the Court has explained, New Jersey's McKinney-Vento dispute resolution procedure is limited to deciding whether a child is in fact homeless or what the proper school of enrollment should be. N.J.A.C § 6A:17-2.7. That procedure does not address injuries suffered as a result of a school's failure to immediately enroll a student pending a determination on their homelessness status or the proper school of enrollment.

### iv.   *The District Failed to Comply With McKinney-Vento's Pendency Provision*

Applied here, the undisputed evidence is that District failed to comply with the plain requirements of the McKinney-Vento Act's Pendency Provision.[19] There was an

---

[19] Defendants do not dispute that Ms. Martin and her children were in fact homeless. Nor could they. The Act explicitly defines "homeless children and youths" to include those living in hotels. 42 U.S.C. § 11434a(2)(B)(i).

obvious dispute between Ms. Martin and the District over J.M.'s school selection and enrollment. The District believed J.M. should have enrolled at Maple Shade High School as his school of origin and because it found that Ms. Martin and J.M. were not living in Mount Laurel when Ms. Martin attempted to enroll J.M at Lenape High School. Ms. Martin, on the other hand, believed that J.M should have been enrolled at Lenape High School—just as his sister, L.M., was enrolled at a Mount Laurel middle school—because the family was living at the Mount Laurel Marriott at the time she attempted to enroll J.M at Lenape High School. When there are disputes about school selection or enrollment, McKinney-Vento's requirements are clear: "the child or youth shall be *immediately enrolled* in the school in which enrollment is sought" by the parent "pending final resolution of the dispute, including all available appeals." 42 U.S.C. § 11432(g)(3)(E)(i) (emphasis added); *see also* N.J.A.C. § 6A:17-2.7(c). The District failed to enroll J.M, at Lenape High School immediately or otherwise.

Here is what should have happened in this case. *First*, the District should have immediately enrolled J.M. at Lenape High School upon Ms. Martin disputing that she did not live in Mount Laurel at the time of registration. 42 U.S.C. § 11432(g)(3)(E)(i). The District argues that its unilateral fact-finding that Ms. Martin did not in fact reside in Mount Laurel at the time of J.M.'s registration absolved it from compliance with the Pendency Provision. [Defs.' Br. at 20 (arguing that Plaintiff's McKinney-Vento claim fails as a matter of law because Plaintiff was "unable to provide any documentation that she was currently residing in the [] District")]. That misses the point. "[T]he text of the Act ... make[s] it clear that in the event of a dispute over

35

whether enrollment is proper, the LEA must *immediately* enroll the child in the school in which the parent or guardian seeks enrollment." *Steelton-Highspire Sch. Dist.*, 2010 WL 1433146, at *5 (emphasis added) (citing 42 U.S.C. § 11432(g)(3)(E)(i)) (rejecting school's argument that because it determined that student was in fact not homeless, it did not have to immediately enroll child under McKinney-Vento)). And to the extent that Ms. Martin's residency proofs were insufficient, that also did not relieve the District of its obligation to immediately enroll J.M at Lenape High School. McKinney-Vento clearly requires immediate enrollment at the parent's school of choice "even if the child … is unable to produce records normally required for enrollment, such as … proof of residency[.]" 42 U.S.C. § 11432(g)(C)(i). The only condition to immediately enroll a homeless student at their school of choice is a dispute "over eligibility, [] school selection or enrollment." *Id.* § 11432(g)(E). That condition was unquestionably satisfied here. The Act "does not condition the Pendency Provision on a likelihood of success." *N.J. v. New York*, 872 F. Supp. 2d 204, 213 (E.D.N.Y. 2001).[20]

*Second*, the District should have provided Ms. Martin with "a written explanation of [its] decision" not to enroll J.M. and inform Ms. Martin of her "rights … to appeal [that] decision." 42 U.S.C. § 11432(g)(E)(ii). There is no evidence in the

---

[20] Of course, McKinney-Vento "is not an absolute right to attend any public school in [New Jersey]." *N.J.*, 872 F. Supp. 2d at 210. Ms. Martin did actually have to reside in Mount Laurel at the time of J.M.'s enrollment in order for J.M. to attend Lenape High School. But the point is that the dispute over whether Ms. Martin and J.M. were in fact living in Mount Laurel at the time of J.M.'s registration should have been resolved through New Jersey's McKinney-Vento dispute resolution procedures, N.J.A.C. § 6A:17-2.7, not unilaterally by the District.

record suggesting that the District apprised Ms. Martin of her right to challenge its decision not to enroll J.M. through New Jersey's McKinney-Vento dispute resolution procedures. *Steelton-Highspire Sch. Dist.*, 2010 WL 1433146, at *5 (school violated McKinney-Vento, in part, by failing to apprise family of rights under the Act).

*Third*, the District should have carried out the formal dispute resolution process in accordance with state law. In New Jersey, "[w]hen a dispute occurs regarding the determination of homelessness or the determination of the school district of enrollment," "the chief school administrator(s), or the chief school administrator's designee(s), of the involved school district(s) or the child's or youth's parent(s) shall immediately notify the executive county superintendent" who "shall immediately decide the child's or youth's status." N.J.A.C. § 6A:17-2.7(a). If the executive county superintendent agreed that J.M. should not have been enrolled at Lenape High School, Ms. Martin would have been provided the right to "appeal [that decision] to the Commissioner [of Education] pursuant to N.J.A.C. 6A:3." N.J.A.C. § 6A:17-2.7(a). And an adverse decision by the Commissioner of Education would have been appealable to the Appellate Division. N.J.A.C. § 6A:3-1.14(b). There is no evidence in the record demonstrating that the District complied with this procedure.

*Finally*, once it was clear that the District would not enroll J.M. at Lenape High School pending the dispute resolution process (let alone engage in the dispute resolution process) as it was supposed to do, it seems that Ms. Martin could have attempted to re-enroll J.M. at Maple Shade High School. A parent clearly cannot impose unlimited liability on a school district that refuses to follow McKinney-Vento's

Pendency Provision by keeping their child out of school altogether when another school district could feasibly enroll the student under the McKinney-Vento Act. There is a question as to whether Ms. Martin could have at least attempted to enroll J.M. at Maple Shade High School as the school of origin, even if she was residing in Mount Laurel. Instead, she decided to enroll J.M. in online classes for his tenth and eleventh grade years and asserts that her damages result from having to stay home with J.M. while he attended online classes. Ms. Martin argues that J.M. could not re-enroll at Maple Shade High School after he apparently misgendered another student in 2022. [Pl.'s Br. at 2.] But there is no allegation or evidence in the record supporting that Maple Shade High School expelled J.M. such that he could not re-enroll or that Maple Shade School District also improperly denied J.M. enrollment under the McKinney-Vento Act. If J.M. could have technically re-enrolled at Maple Shade High School, Ms. Martin may have failed to mitigate at least some of her damages. *See* Martin A. Schwartz, SECTION 1983 LITIGATION 189 (Kris Markarian, 3d ed. 2014) (citing *Miller v. Lovett*, 879 F.2d 1066, 1070–71 (2d Cir. 1989) (Section 1983 plaintiffs have a duty to reasonably mitigate damages)). The Court intends to order discovery on Ms. Martin's actual damages and damages mitigation together with discovery on the remaining elements of her *Monell* claim.

* * *

In sum, J.M. should have been learning alongside other children at Lenape High School until the dispute was resolved. Homeless children should "not suffer while a school district determines whether he or she is properly enrolled." *Steelton-*

*Highspire Sch. Dist.*, 2010 WL 1433146, at \*5. Because it is undisputed that there was a McKinney-Vento Act dispute and that the District failed to enroll J.M. pending the outcome of that dispute, the Court will **GRANT** Plaintiff's Motion for Summary Judgment on her McKinney-Vento Act claim.

### 4.    *Plaintiff Must Establish the Remaining Elements of Her Municipal Liability Claim Through pro bono Counsel*

The Court is unaware of any decision awarding damages for a violation of the McKinney-Vento Act. The typical remedy sought for a violation of the McKinney-Vento Act is injunctive or declaratory relief requiring a school to immediately enroll the child at the school of choice. *Steelton-Highspire Sch. Dist.*, 2010 WL 1433146, at \*5 (granting motion for preliminary injunction); *N.J.*, 872 F. Supp. 2d at 215 (same); *G.S. by J.S. v. Rose Tree-Media Sch. Dist.*, 2017 WL 11722568, at \*1 (E.D. Pa. July 31, 2017), *aff'd*, 914 F.3d 206 (3d Cir. 2018) (granting motion for summary judgment and finding that homeless child was "entitled to enroll at [high school of choice] for the remainder of his homelessness"). Ms. Martin appears only to seek damages. [Docket No. 1 at 7.] But because McKinney-Vento cases are properly brought vis-à-vis Section 1983, Plaintiff can recover damages in this case. *See* 42 U.S.C. § 1983 (authorizing the imposition of liability "in an action at law, suit in equity, or other proper proceeding for redress").

Because her Complaint requests damages against the District, [*See* Docket No. 1 at 7], the Court has construed this suit under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978) (holding that local governing bodies can

be sued for monetary relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").[21] Under *Monell*, a plaintiff must establish the violation of a federal constitutional or statutory right and prove the that a municipal policy or custom caused that violation. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). Ultimately, to establish *Monell* liability, a "plaintiff 'must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered.'" *Grande v. Keansburg Borough*, 2013 WL 2933794, at *11 (D.N.J. June 13, 2013) (quoting *Losch v. Borough of Parkesburg, Pa.*, 36 F.2d 903, 910 (3d Cir. 1984)).

The foregoing analysis holds only that Plaintiff has shown a violation of her McKinney-Vento rights against the District, the first step of her *Monell* claim. But in order to receive full and final relief, she must still establish the other elements of her *Monell* claim—that an official District policy or custom[22] was the "moving force" behind the McKinney-Vento Act violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S.

---

[21] Plaintiff cannot however recover punitive damages against the District. *City of Newport v. Fact Concerts*, Inc., 453 U.S. 247, 271 (1981).

[22] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (internal quotation marks and citation omitted). Customs are "such practices of state officials ... [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Together with a policy or custom, "liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Negligence will not suffice.

397, 388–89 (1997) (quoting *Monell*, 436 U.S. at 694). There does not appear to have been any discovery on *Monell* liability. The Court intends to order the parties to conduct discovery on the remaining elements of Plaintiff's *Monell* claim.

Finally, in addition to appointing counsel on behalf of J.M., the Court will also appoint counsel for Ms. Martin. The Court finds the relevant *Tabron* factors satisfied which, again, the Court may consider *sua sponte* after considering whether Ms. Martin's McKinney-Vento claim has arguable merit (it does). Although Ms. Martin has proven able to present her own case so far, proving *Monell* liability for a violation of McKinney-Vento is legally novel and complex and will require factual investigation. *Rolle v. Essex Cnty. Corr. Facility*, 2022 WL 1044968, at *6 (D.N.J. Apr. 7, 2022) (appointing pro bono counsel where proving *Monell* liability could be complex). Accordingly, the Court will appoint pro bono counsel for Ms. Martin.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be **GRANTED**, in part, and **DENIED**, in part. Defendants' Cross Motion for Judgment on the Pleadings will be **GRANTED**, in part, and **DENIED**, in part. An accompanying Order shall issue.

__August 14, 2024__                                   __s/Renée Marie Bumb__
Date                                                    RENÉE MARIE BUMB
                                                        Chief United States District Judge